Thank you, Mr. Maciasek, as well. Okay, our next case for argument is United States v. Richardson. Mr. Kamen. Good morning. May it please the court, my name is Richard Kamen and I represent Jackie Richardson. The case arises, as many of the cases I believe your honors see, in the context of increasingly common federal and state cooperation and communication. Now, the central issue raised by the government is whether the court's decision last summer in United States v. Clark establishes a bright-line rule that a complaint filed against somebody in state custody and a detainer has no effect for federal, in all cases, has no effect for federal speedy trial rights, or whether there are circumstances, if you will, exceptions under which a complaint and detainer could have federal speedy trial implications. Clark doesn't help us a whole lot because it deals only with the statute. We've got a different standard for triggering the constitutional speedy trial rights with the official accusation language for merit. Yes, but I would suggest, your honors, that in practical effect, in many cases, a complaint filed against an individual coupled with a detainer really does constitute the kind of official accusation that triggers at least speedy trial consideration. And I think this case demonstrates how that can unfold. While the best I can tell, the initial complaint was made by Richardson's girlfriend about some sort of domestic violence, apparently, almost immediately, the ATF agents, perhaps, and I'm speculating, suspect having Richardson in their sights for some other reason, became involved. They were part of the group that questioned the girlfriend. They were part of the search team that found the weapons. They were intimately involved in the original, in the prosecution. And this is, putting aside the statute, this is unlike Clark because in Clark, the underlying conduct in state court was flight. There was no federal involvement in that underlying state prosecution. So what is the rule that you're contending? The rule we would ask for is that in a case where there is significant federal state cooperation, the filing of a detainer, complaint and detainer, against an individual who is ultimately held in custody in state court triggers federal speedy trial rights. At the risk of trying to argue with you, why don't you argue for a broader rule that simply any complaint and detainer ought to be sufficient to satisfy the constitutional standard? I'd like to, but unfortunately I have to recognize that there is, at least seem to be, some authority that opposes that. There's some authority that opposes that. There's some authority that supports it from the Ninth and Fourth Circuits. Yes. So, fine. If the court ends up there, that would be great. You know, so fault me for being less than not ambitious. I would never do that, Mr. Kennedy. No, no, and I understand that. I understand that. You know, and really, the other part of this, in Clark, and again, I agree with Judge Hamilton that Clark is a statutory case, but there's some language in Clark that is... I think that if it does, it would really return us to a time of true dual sovereignty. Because the fact of the matter is that the dual sovereignty doctrine arose at a time when there really were two sovereigns that weren't necessarily communicating the way they are now. Well, that is hardly a desirable situation. No, I agree. Communication between state and federal law enforcement? Absolutely. That's what you're advocating? No, absolutely not, Your Honor. You're talking about this halcyon time when there was no cooperation between them. Do you want to get back to that? Do you think that's the golden age of law enforcement? No, it was much different. And what's happened...  No, it would discourage filing complaints and detainers against a person in state custody until the state charge is resolved. What happened in Richardson's case is he's arrested and put in state custody, but a federal complaint and detainer is filed. And at least Richardson has alleged consistently that the reason the state court bond remained at $500,000, which in Indiana is an extraordinarily high state court bond, was because of the recognition of the existence of the federal complaint and detainer. And so that's what might be discouraged, is the process of using the complaint detainer scenario in effect to continue to impact individuals on their state court custody. If Richardson's released on bond in state court and completes the process and is then arrested, then we're in the more traditional situation where he has suffered nothing as a result of the federal investigation. As the Clark case notes, nobody has ever... So you're saying the federal investigation hurt him because it led to a higher state bond, is that your argument? The federal complaint and detainer. Whatever it is, you're saying these federal filings influenced the state, and that influence constitutes federal prosecution and starts the speedy... Yes. There was no way he was getting out of custody on bond in the state proceeding. He was caught with 175 guns, gun parts, fully automatic weaponry, and 59,000 rounds of ammunition. He was manufacturing. There is no possible way the state court judge was going to let him out. Obviously, I wasn't trial counsel, and I wasn't there. That's just not happening. I mean, there's no prejudice here. The constitutional standard requires... No, respectfully, I disagree. The standard in bond in state court in Indiana would not necessarily preclude him. It might have... I'm not saying there was a legal entitlement to release. I'm saying the judge in the exercise of discretion would have set a very high bond, the federal detainer notwithstanding. I hear what you're saying, and certainly that's a reasonable speculation, but I'm also told that essentially the judge said, I'm not reducing this bond because of the existence of this federal complaint and detainer. Now, what if what you had was that this person is in jail, state jail, and a government officer says to the jailer, say, you know, this guy is really dangerous. We know. We've investigated. He's really dangerous. You ought to warn the local courts and so on. Don't let this guy out. He's too dangerous. Now, would that be sufficient federal action to trigger the speedy trial? No, because there he is not under any... That's what you're complaining about. They didn't get a lower... I mean, this is a part, of course... Well, the very sensible point that Judge Sykes made, but supposing, you know, maybe the, as you say, it was $500,000. It's high for Indiana. So, as I say, suppose that as a result of this federal officer's warning, his bail isn't reduced. And my question to you is, on your theory, why isn't that enough to trigger the speedy trial cause? It's a different... I mean, in a perfect world it would be, but I recognize it is a different quality of accusation. Why? Because the filing of a complaint... But it has no different consequence in my example. Well, but the filing of a complaint is... Why is that a big deal, right? Well, the courts have made it a big deal historically. Well, that's not very persuasive. Well, that's not very persuasive. Well, it certainly wasn't a big deal historically. I'm sorry. Well, how about that? Made a big deal historically? Why is that important? Because the complaint and detainer process works in a way to, in many, many cases... You know, in my example, the simple warning from an FBI agent has the identical effect of the complaint and detainer. It keeps the person in jail for the $500,000 bond. Why do you distinguish between that and when there's a piece of paper filed? Perhaps I misunderstood. If the FBI agent is going to the judge and telling the judge, keep him locked up because of this, and it's an ex parte communication with the judge, then it would have... I wasn't talking about that. That was just one law enforcement officer to another, not to a judge. And I don't think then if the second law enforcement officer... But it has the same effect, so I don't know why you're distinguishing. Well, if I may, it would only have the same effect if the second law enforcement officer went to the judge and said, FBI agent told me this, and then we might be in the same situation. Then what happens then? Then we might be in exactly the same situation. If I could follow up on something, Mr. Kamen. It seems to me there's a pretty good argument for saying the complaint and detainer were a sufficiently official accusation here to trigger the constitutional rights. Yes. But if I understand this record, during the 16 or so months that Mr. Richardson was in state custody and subject to this detainer, there was not any effort on his part to push the federal government to fish or cut bait, to move on this. And that's where I would have some trouble in reversing this on federal constitutional speedy trial grounds, that he wasn't pushing. Have I misread that? No. He did not file a... or send a letter to the district judge. It's my understanding until he was formally in federal custody. That's correct. But I would suggest this. I could see a situation, and certainly Mr. Renko will perhaps speak to this, where the U.S. attorney might not want that because if the letter gets to the district court and gets lost because there's just nothing there, then who knows what happens. And again, under Barker, the request for an assertion of the speedy trial right is perhaps the most limited of the four factors. Excuse me. That's the toughest of the factors for your case. Absolutely. No question about that. Okay. Well, thank you very much, Mr. Kamen. Mr. Renko? May it please the court, counsel, good morning, Matthew Renko on behalf of the United States. It's the government's position that United States v. Clark,  is actually instructive of the United States and instructive for our purposes because if memory serves, in Clark, in dealing with the issues that they went through, the court in Clark talked about and relied on prior cases that had dealt with the Sixth Amendment Speedy Trial Act violation  The analysis was essentially similar or identical. Obviously, there's a very close relationship, but Mr. Renko, this is my concern about your brief and your reliance on Clark. The constitutional and the statutory analysis will often overlap, but the specific issue we have to deal with at the outset here is what triggers or engages the protection. In the statute, it's arrest, indictment, or information. In the constitutional setting, we have case law to rely on and we get this more open-ended term official accusation and we get circuits that have come out both ways on whether this combo of a complaint and detainer is sufficient. But I've got to say, it sure sounds like an official accusation to me when federal law enforcement agents go to a judge and say we think this person committed the following crime on less than such a date and we want an arrest warrant and a detainer. That doesn't end the case, but it does at least get us into the Barker against Wingo analysis. In the government's view, when we look at the procedural process, in our view, the complaint is not an official accusation because, as the court just indicated, the complaint can't end the case. There has to be a more formal charging document filed. In other words, a criminal defendant in federal court can't come in and plead guilty to a criminal complaint. What is the nature of this complaint? You say it's informal. What is it exactly? I'm sorry, Your Honor. What is this complaint? It's not an indictment, presumably. No, Your Honor. So what is it? It's a sworn affidavit establishing probable cause reviewed by a magistrate who makes it determined that the affidavit sworn by the agent establishes probable cause for an arrest. But that is only the beginning of the process. As we all know, the next step then is when a person is brought into court they have a right to a preliminary examination. So what does it ask? What does the complaint ask? And the person is in jail, right? So what is the significance of a... The complaint, Your Honor, is one of the many, I guess, the primary vehicle the complaint is the primary vehicle for the issuance of an arrest warrant. The... Well, what's the arrest? Isn't he in jail already? He was in jail already, Your Honor. So what's the arrest warrant? I don't understand. How do you arrest someone who's in jail? So, in our view, we look at the fact that Mr. Richardson was arrested on what are primarily the chief charge. It's my understanding that this is all anticipatory of the conclusion of the state court proceedings. Absolutely, Your Honor, without question. So that's why you do it this way. Absolutely, and the detainer is simply a notification to the Hendricks County Jail that when Mr. Richardson is finished with the state court business... We've got probable cause on him, so give him to us. Yes, Your Honor, absolutely. Right, it's not a charging document. So how long could that go on? Well... Is there any limit beyond the statute of limitations? Quite frankly, Your Honor, the hypothetical, I believe the statute of limitations probably would act as our sealant. If it got to the point where Mr. Richardson's state court case dragged out sufficiently long enough where we're running into statute of limitations problems, we may very well have to assess whether we do something, whether we step in. The concern, though, for us, Your Honor,  an identified actual victim in a state court domestic violence case. Having read the affidavit, the facts of the state court case were horrific. The victim was entitled to her day in court, and we wanted to make sure she had that opportunity. She was assisting the Hendricks County Prosecutor's Office. Our fear was, Your Honor, if we had pulled him out of state court custody, that would have affected, perhaps, the interstate agreement on detainers. I don't get that. There was a state court proceeding in process. Yeah. If we had taken him out of state court custody before that proceeding ended, it is possible that the federal government's actions in doing that would have precluded the state from taking Mr. Richardson back when we concluded our case. How's that? The interstate agreement on detainers. What provision would prevent... I thought the whole purpose was to facilitate cooperation between state and federal and multi-state prosecutions. It's my understanding that that's at the end of the proceeding, which is where we get our detainers from. But, in any event, our situation was we wanted to make sure the state court proceedings concluded. Secondarily to that, we look at the broader range of punishments that he was facing in state court for, in addition to the domestic violence, the gun charges. If he had gone to trial, they charged him with being a serious violent felon in possession. It's possible that he could have gotten such a significant sentence in Hendricks County Court that we wouldn't have had any interest in doing anything with it at all. Are there any time limits under state law? I'm sorry, Your Honor? What are the time limits under state law for bringing him to trial? I'm not familiar with that, Your Honor. Obviously, the constitutional constraints are there. Yes, Your Honor. There is probably a state speedy trial act? There is. I don't claim to be expert in it, but there is. That, of course, brings up the other issue. Judge Hamilton, you mentioned this previously, but while all this was going on in state court, not only did Mr. Richardson not come to federal court and say, there's a federal criminal complaint detainer, but he also availed himself of the full process of discovery, taking depositions of witnesses, which is possible in Indiana State Court. He filed motions to continue. He filed a motion to suppress, all of which, if we look at that from the standpoint of the speedy trial act, just as a guide, if you will, all of that time that it took for that process to go through the Hendricks County Court would have told the speedy trial clock had he been in federal custody. It's really an issue here when all of those delays in the Hendricks County Court were directly attributable to Mr. Richardson hiring and firing lawyers, filing motions to continue, asking to take depositions and taking depositions, ultimately filing a motion to suppress, which he then withdrew and filed a petition to plead guilty. All of this takes time. And again, the federal government has to be careful in some instances of inserting itself in the middle of that process. Let me ask you, Mr. Rinke. I think I've expressed my concern about, I mean, if we say that the complaint and detainer don't engage the constitutional standard at all, then there's a pretty serious risk of prejudice and whipsawing a defendant between the two sovereigns. Not inevitable, but it's possible. But I'm wondering if we were to say, well, the complaint and the detainer do engage federal speedy trial analysis, but it's important in applying that standard to ask, in essence, whether the defendant or the accused was pushing for the federal process to move forward. I assume there are situations where the same defendant is subject to simultaneous prosecution and the courts trade him back and forth if he's in custody, and that's a manageable solution to that problem. Is that right? Or does it complicate the situation unduly here? Your Honor, in the government's view, I think that suggesting that a federal complaint and detainer somehow triggers a constitutional speedy trial right, or the government's speedy trial responsibilities complicates the issue unnecessarily because, in our view, the complaint is not a formal charging document. I understand, and I think I'm inclined to disagree. Whether anybody else does, I don't know. But it also, if we were to take that approach, then there would be some exposure to abuse, whether deliberate or otherwise. And I'm wondering whether a more discriminating rule that says the complaint and detainer do engage constitutional protections, but in essence, if you're in a hurry, you've got to ask for it, would accommodate the government's concerns along these lines? I'm not sure that it would. And our concern continues to be that in states where there are a couple of concerns. I talked about one already. The other one is, in all this, I've not done the research to determine whether or not this would be effective, but in Indiana, there's a statute that says if someone, for example, Mr. Richardson, was brought into federal custody and prosecuted for what amounts to the same events, the same circumstances, that engages double jeopardy for purposes of the Indiana statutes and the Indiana prosecution. So if we did, and we brought Mr. Richardson into custody first under federal law, or into federal custody and prosecuted him for the federal charges, and then we tried to send him back, even if there wasn't an issue with the interstate agreement on detainers, it's quite possible that that would preclude the state of Indiana from prosecuting him, at least with respect to the gun charges. It doesn't sound like a tragedy to have, in essence, a little bit more protection for double jeopardy than the dual sovereign. Right, Your Honor, but again, we tread lightly because of the dual sovereignty. We have to understand and when I say we, I'm talking about us, certainly not the court. Please don't misunderstand me. It's a delicate balance when we deal with the states, and I'm sure they feel the same way when they deal with us. They have responsibilities to the citizens of their counties, and they want to make sure that they that they're taking the cases and prosecuting the cases and such that they believe are important to them, and if we step in and do it because this court decides that there's a federal speedy trial right, that may very well impact how the state is able to proceed in its cases, and I would say that's why I would submit to the court that a rule, as Your Honor posed hypothetically, would unnecessarily complicate things, and particularly given the nature of the criminal complaint and the detainer process, which again, we feel respectfully is not the formal charging document. Thank you, Your Honor. Mr. Kamen, do you have anything further? If I may. I don't understand your conception of how things would work. Would this mean that there would be simultaneous state and federal prosecutions? In some circumstances that would be the ideal solution. I don't understand. The defendant shuttles back and forth? What, every other day in the state court? Most of the time he's in the federal court? It's a practical matter. If you take this case as an example, Hendricks County and Indianapolis are adjoining communities. They're 20 miles apart. He could have been taken to federal court for an arraignment, then returned to the Hendricks County Jail, done his depositions in state court, proceeded in state court, his federal lawyer if it's the same, could have done the discovery. The two cases could have proceeded simultaneously. Now, absolutely. That's ridiculous, I think. Well, it happens. I don't get it. It seems so wasteful. How does he keep his mind straight in two different prosecutions, two different bodies of law? But essentially what you had, and if I may, and I know I'm out of time, he was charged with this gun case. It wasn't like it was just a domestic violence case. The prosecutor says, well, we didn't want to interfere with all of that. But the fact of the matter is that the gun case... But all the federal government is doing, as I understand it, is making sure that in the event something goes wrong in the state prosecution, he's not sprung. Right? That's all that, that's the purpose of the complaint and detainer, just to make sure he's in custody should the federal government decide to prosecute him. What's the problem? He's in custody anyway, so... But in this case, and I understand Judge Sykes' speculation, but certainly there are cases where the detainer will make sure a person who otherwise would be released will remain in custody. And that is the harm and the potential for whipsaw. But what are you going to do about it? Again, you're going to have simultaneous federal and state trials? Or at least recognize that the federal speedy trial right attaches. So that has to go first, and then the state trial? No, if you just look at... Judge Hamilton says, if the defendant is not pushing, you know, then it's on him. If the defendant is... But if all the defendant is doing is, you know, asserting his rights in state court. So he says, oh, I want to be tried in federal court first. I have this speedy trial right. So the state is left sitting there, waiting for the outcome of the federal trial. Somebody's got to be second, and I don't know that the state would necessarily be second. Just because he asserts the federal... No, I'm sure they'll go on simultaneous. Well, chaos. Okay, well, thank you very much. Thank you. Were you appointed, Mr. Hamilton? No, I wasn't. Well, we thank you anyway. Thank you very much, Mr. Renka.